**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-02437-DDD-NYW

DIANA SANCHEZ and J.S.M.,

      Plaintiffs,

v.

CITY AND COUNTY OF DENVER, et al.,

      Defendants.

---

### DENVER HEALTH DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT AT LAW

---

Defendants, Denver Health and Hospital Authority, Nina Chacon, R.N. and Rachime Herch, R.N., through their counsel, Ruegsegger Simons & Stern, LLC, and pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), hereby submit their Motion to Dismiss as follows:

**STATEMENT AS TO CONFERRAL:** Pursuant to Judge Domenico's Practice Standard III.D.1., counsel for these Defendants conferred with counsel for Plaintiffs who oppose the relief requested.

### FACTS AS PLEAD IN COMPLAINT

Ms. Sanchez was booked in the Denver County Jail on July 14, 2018. (Complaint ¶18). Ms. Sanchez was eight months pregnant when she entered the jail. (Complaint ¶ 19). At the time she was in jail, Ms. Sanchez was prescribed and taking methadone on an opiate withdrawal protocol as she was suffering heroin withdrawal. (Complaint ¶¶ 20, 73, 79). During her time at the jail she received examinations and health care related to her pregnancy from Denver Health personnel. (Complaint ¶¶ 21-22).

On July 31, 2018, Ms. Sanchez alerted Denver jail deputies that she claimed to be in active labor. (Complaint ¶ 23). At approximately 5:00 a.m., Ms. Sanchez told a Denver jail deputy that she had been experiencing contractions. *Id.* During the course of this time, Ms. Sanchez was communicating with Denver jail deputies and Denver Health nurses on site. (Complaint ¶¶ 23-24, 27-28). At approximately 10:20 a.m., Deputy Hart requested a non-emergent van run to take Ms. Sanchez to the hospital. (Complaint ¶34). Ms. Sanchez' delivered J.S.M. in her cell at approximately 10:44 a.m. (Complaint ¶1).

## STANDARD OF REVIEW

The Denver Health Defendants move to dismiss Counts I and II of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Fed. R. Civ. P. 12(b)(6) allows a defendant to move to dismiss a claim for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint may be plausible if it pleads facts that enable a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, a complaint warrants dismissal if it fails "*in toto* to render [plaintiff's] entitlement to relief plausible." *Twombly,* 550 U.S. at 569 n.14.

In the context of § 1983 actions, "it is particularly important…that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her[.]" *Robbins v. Oklahoma,* 519 F.3d 1242, 1250 (10th Cir. 2008). Indisputably, individual liability under § 1983 requires personal participation in any unlawful acts. *Beedle v. Wilson*, 422 F.3d 1059, 1072 (10th Cir. 2006); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). A Plaintiff must identify specific actions taken by each

defendant that could form the basis of a constitutional violation, and he cannot group numerous defendants into a single cause of action without isolating any of their allegedly unconstitutional acts.  *See Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011).

Further, the Denver Health Defendants move to dismiss the remaining claims of Plaintiffs' Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  If this Court determines the federal claims shall be dismissed, these Defendants are requesting the state law claims be dismissed and this Court not exercise supplemental jurisdiction over them.

Submitted in support of the Denver Defendants' Motion to Dismiss (ECF #22) are the videos from the jail and documents related to the incarceration of Ms. Sanchez.[1]  The Denver Health defendants also cite to these exhibits for purposes of this motion.  The Court may review the videos without converting this motion to one made pursuant to F.R.C.P. 56.  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) ("the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the document's authenticity.").  "If a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claims, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."  *GFF Corp. v. Assoc. Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997).

## ARGUMENT

### I.    Federal claims pled against Nurse Chacon and Nurse Herch

Elements:

---

[1] The videos are attached to ECF #22 as Exhibits E-I.

Nurses employed by the state, even on a part time basis, to provide medical services to inmates act under color of state law for purposes of 42 U.S.C. § 1983 when undertaking their duties to treat an inmate.  *See West v. Atkins*, 487 U.S. 42, 54 (1988).  "Qualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset."  *Hays v. Ellis*, 331 F. Supp. 2d 1303, 1306 (D. Colo. 2004).  Qualified immunity shields government officials who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  "In resolving a motion to dismiss based on qualified immunity, a court must consider [1] whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and [2] whether the right at issue was clearly established at the time of defendant's alleged misconduct."  *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (internal quotation marks and ellipsis omitted).  If a Plaintiff fails to carry either part of the two-part burden, a Defendant is entitled to qualified immunity.  See *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

The nurses here assert the defense of qualified immunity to each and every constitutional claim asserted against them in their individual capacities.  There is no constitutional right to negligence-free medical care.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Thus, to overcome the defense of qualified immunity in relation to medical care, a plaintiff must prove deliberate indifference to serious medical needs.  *Id.*  Plaintiffs have not alleged sufficient facts to support their claim of deliberate indifference and have not presented allegations that would support a conclusion that the nurse Defendants should have known they were violating constitutional rights while providing medical care.

Argument:

A complaint must allege how each defendant is liable for the deprivation of constitutional rights by establishing his or her direct personal participation. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). Plaintiffs' Complaint has not established a violation of a federal constitutional or statutory right. A complaint alleging Eighth Amendment violations must state specific facts that demonstrate deliberate indifference to a substantial risk or serious harm.[2] *See Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). In particular, the Complaint must satisfy two components to survive a motion to dismiss: (1) a showing of objective seriousness of the medical risk Plaintiffs' faced; and (2) a showing of Defendants' culpable state of mind. *See Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014).

The objective prong requires a deprivation of harm that is "sufficiently serious" and results in "substantial harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). For the purposes of this motion only, the Denver Health Defendants do no contest that the objective element has been sufficiently pled.

However, the subjective prong requires allegations that the medical provider "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. This may be demonstrated by a showing of either (a) a conscious disregard of a substantial risk or serious harm arising from Plaintiff's symptoms, or (b) actual knowledge of Plaintiff's symptoms and refusal to order further treatment. This is a "high evidentiary hurdle" that cannot be met if "a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent the evidence of actual knowledge or recklessness." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). It is not enough that "a reasonable person would have known,

---

[2] If the allegations are considered either an Eighth or Fourteenth Amendment claim via alleged inadequate or delayed medical care, the analysis is the same. *Lopez v .LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999). If Ms. Sanchez is attempting to state a substantive due process claim under the Fourteenth Amendment, such a claim fails, as her claim is cognizable under one of the specific constitutional amendments. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Conner*, 490 U.S. 386, 395 (1989)).

or that the defendant should have known" of a substantial risk. *Farmer*, 511 U.S. at 843 n. 8. Nor is it enough that the defendant "knew the underlying facts but believed that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844. Rather, "the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Thus, because medical malpractice or negligent failure to provide adequate medical care does not constitute the unnecessary and wanton infliction of pain, it does not rise to a constitutional violation. *Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999) ("A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation") (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)); *Ledoux v. Davies,* 961 F.2d 1536, 1537 (10th Cir. 1992).

Plaintiffs' Complaint does not contain any factual allegations that the Defendant nurses *knew* that Ms. Sanchez was going to give birth in her jail cell and consciously disregarded any risk that could arise from such a birth. Based on the allegations in the Complaint, Ms. Sanchez was being monitored in her jail cell prior to and after the birth of J.S.M. As stated in *Farmer*, Plaintiffs must not only allege the nurse Defendants knew of facts from which an inference or substantial risk could be drawn, but also that the nurses drew the inference. *Farmer,* 511 U.S. at 837. The question is not whether J.S.M's birth was imminent at some point, but whether the risk of a serious medical condition was obvious that one could infer that the nurses knew of it, and disregarded it. *Johnson v. Quinones*, 145 F.3d 164, 168-169 (4th Cir. 1998). In other words, did the nurses actually draw the inference that Ms. Sanchez history and presentation signified that she was going to give birth in her jail cell and cause her and J.S.M. injuries and nevertheless disregarded it? The answer must be no.

The Complaint does not state sufficient facts that either Nurse Chacon or Nurse Herch intentionally delayed medical care to Ms. Sanchez. Ms. Sanchez was receiving care from Nurse Chacon (Complaint ¶ 32,

34).  The jail had arranged for Ms. Sanchez to be transported to the hospital.  (Complaint ¶¶ 32, 34, 36-38). There are no allegations in the Complaint that either nurse had the ability to remove Ms. Sanchez from the jail themselves.  As alleged, Ms. Sanchez was provided medical care at the jail during the pendency of her stay. While Plaintiffs' plead that Ms. Sanchez was at risk for premature birth because she had bacterial vaginosis, there is no allegation that the nurses knew that the birth of J.S.M. at the jail was imminent because of this fact or that it would have been obvious to the nurses that different medical treatment was necessary, and denied.  An Eighth Amendment violation only exists where a plaintiff can show a delay caused substantial harm.  Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005) (citing Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001) (quotation omitted)).  Substantial harm is this realm is defined by the Tenth Circuit as a lifelong handicap, permanent loss, or considerable pain.  Id.

Allegations of being "totally disorganized and unprepared" do not rise to the level of conscience disregard.  (Complaint ¶55).  Neither do allegations that Nurse Herch "awkwardly took Baby J.S.M. and patted him on the back."  (Complaint ¶53).  Plaintiffs are required to allege that Nurse Chacon and Nurse Herch acted with a sufficiently culpable state of mind in their actions to meet this "high evidentiary" burden.

Plaintiffs' allegation that Ms. Sanchez complained of abdominal pain and that her water broke does not satisfy the requirement that the nurses actually knew about and disregarded the imminent birth of J.S.M.  It is not whether the symptoms were obvious, but whether the risk of a serious medical condition was obvious and it was disregarded.  Plaintiffs' Complaint does not state a claim as to the necessary culpable state of mind of the nurses: deliberate indifference to a serious risk of harm.  *Farmer*, 511 U.S. at 834; *Estelle*, 429 U.S. at 104.  Accordingly, as Plaintiffs'

Complaint does not meet the requisite standard for alleging a claim of deliberate indifference against the nurses, such claims must be dismissed.

## II.     Federal claims as asserted against Denver Health

Elements:

Denver Health[3], as an entity, cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory. See *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Under 42 U.S.C. § 1983, a municipality can be held liable for its own policies and procedures if those policies and procedures amount to deliberate indifference to a plaintiff's constitutional rights. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037-38.  "[T]he scope of § 1983 liability does not permit such liability to be imposed merely on evidence of the wrongful actions of a single city employee not authorized to make policy."  *City of Oklahoma v. Tuttle*, 471 U.S. 808, 809 (1985).

Plaintiffs must identify a specific municipal policy or custom that caused Plaintiffs' alleged injury.  *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997).  Once Plaintiffs have identified, either by policy or custom, properly attributable to the municipality, they must also show that these policies or customs, which amount to deliberate indifference to their constitutional rights, are the moving force that caused the constitutional violation.  *Brown*, 520 U.S. at 404; *City of Canton v. Harris*, 489 U.S. 378-389-91 (1989).

The unconstitutional harm is caused by such a policy if it results from decisions of a duly constituted legislative body or an office whose acts may fairly be said to be those of the municipality itself.  *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157 (10th Cir. 2003).  A custom or policy is not shown by alleging one unique incident where Plaintiff suffered a

---

[3] See § 25-29-103(1), C.R.S. (2017), creating Denver Health as a political subdivision of the state.

deprivation.  Rather, the Plaintiff must demonstrate a specific pattern or series of incidents that support the allegation of custom or policy.  *Sekerak v. City and County of Denver*, 1 F.Supp.2d 1191, 1199 (D. Colo. 1998); *Butler v. City of Norman*, 992 F.2d 1053 (D. Colo. 1993).

Argument:

To satisfy this standard, such policies and procedures must be the "moving force" behind the constitutional violation. However, an entity, such as Denver Health, cannot be held liable solely for the actions of its employees or agents. In this matter, Claim One is asserted against "all defendants." (ECF #1 at 36).  Claim One is clearly based upon the actions of *individual* defendants and Denver. *Id.* at ¶¶122-125. Denver Health cannot have respondeat superior liability for the alleged unconstitutional acts or omissions of such individual defendants, particularly those not affiliated with Denver Health. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037. Therefore, Ms. Sanchez' claims as to Denver Health should be dismissed. In order to hold a governmental entity liable in its official capacity, a plaintiff must show "(1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). An entity can only be liable in its official capacity when a plaintiff establishes a predicate constitutional violation by an employee.  *See Estate of Larsen ex. Rel Sturdivan v. Murr*, 511 F.3d 1255, 1264 (10th Cir. 2008).

Plaintiff, J.S.M, brings the Second Claim for Relief through a violation of the 14th Amendment Substantive Due Process – special relationship liability.[4]  Due process claims built on the special-relationship doctrine have four elements: (1) plaintiff must demonstrate the existence of a special relationship, meaning that the plaintiff completely depended on the state to satisfy basic human needs; (2) plaintiff must show that the defendant knew that the plaintiff was in danger or

---

[4] This argument is further addressed in section III below.

failed to exercise professional judgment regarding that danger; (3) plaintiff must show that the defendant's conduct caused the plaintiff's injuries; and (4) defendant's actions must shock the conscience. *Dahn v. Amedei*, 867 F.3d 1178 (10th Cir. 2017).

Likewise, Plaintiffs' Claim Two asserts a claim against "all defendants" for special relationship liability. (ECF # 1 at pg. 40). Plaintiffs' second claim is based upon the alleged conduct of the individual defendants. *Id.* Denver Health has no respondeat superior liability for the acts of several of these individual defendants. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037. A Plaintiff must identify specific actions taken by each defendant and he cannot group numerous defendants into a single cause of action without isolating any of their allegedly unconstitutional acts. *See Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011).

In addition, the Denver Health nurses are sued in both their individual and official capacities. To the extent the nurses are sued in their official capacities, they are synonymous and treated as the same as a claim against Denver Health. *Pietrowshi v. Town of Dribble*, 134 F.3d 1006, 1009 (10th Cir. 1998). Therefore, the official capacity claims should be dismissed as duplicative of the claims against Denver Health.

### III.     Fourteenth Amendment claim of J.S.M.

Elements:

Only under the narrowest of circumstances has the Tenth Circuit recognized a § 1983 violation of the Fourteenth Amendment substantive due process rights. *Becker v. Kroll*, 494 F.3d 904, 922 (10th Cir. 2007). Plaintiff here attempts to allege a special relationship existed between J.S.M. and the Denver Health Defendants by reason of his birth at the jail, and accordingly, that he was owed an affirmative duty of protection from harm. (Complaint ¶185-188).

For J.S.M. to state a plausible claim under the special relationship doctrine, J.S.M. must allege sufficient facts that each individually named defendant must have known of the asserted danger or failed to exercise professional judgment, that such conduct had a causal connection to the ultimate injury incurred, and that such conduct shocks the conscious. *DeShaney v. Winnebago Cty. Dep't of Soc. Svcs.*, 489 U.S. 189, 211 (1989).

Argument:

J.S.M.'s allegations in the Complaint do not state sufficient allegations that any Denver Health Defendants knew of any danger to J.S.M. or failed to exercise professional judgment during his care after he was born.  Further, there is no allegation in the Complaint that J.S.M. suffered any specific physical injury as a result of his birth in jail.  "As a matter of public policy, the birth of a normal and healthy child does not constitute a legal harm for which damages are recoverable." *Morris v. Sanchez*, 746 P.2d 184, 188 (Okla. 1987).  The video shows that once he was born, J.S.M. was indeed taken care of by the individuals at the jail.  *Denver Defendant's Motion to Dismiss*, **Exhibit I** at 10:44 - forward.  While Plaintiffs' allege that the nursing staff was "totally disorganized and unprepared" to care for J.S.M., the allegations contained in the Complaint do not rise to the level that shocks the conscious as is required to state a plausible substantive due process claim.  As shown in the video referenced above, the actions of the Denver Health staff was far from actions required to shock the conscience of federal judges.  *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002).

The video submitted shows a different story than what is alleged.  Where a video contradicts a plaintiff's allegations contained within his complaint, the court need not accept those allegations as true. *Estate of Ronquillo v. City and Cnty. of Denver,* 720 Fed. Appx. 434, 437 (10th

Cir. 2017) ("…we accept as true Plaintiff's allegations except when directly contradicted by the attached exhibits – in this case, the video of the incident.")

J.S.M. is required to show that the conduct of the Denver Health Defendants had a causal connection to the ultimate injury occurred.  However, the allegations in the Complaint are bare as to what physical injuries J.S.M. actually suffered.  J.S.M. is required to allege he sustained injuries as a result of his birth.  And while it is alleged that he was born in a jail cell, the act of being born in jail itself does not necessarily precipitate injuries.

Plaintiffs contend that the jail was not well-equipped to treat J.S.M. after his birth, but the fact that J.S.M. was treated by several nurses after his birth and subsequently first responders and hospital staff cannot be considered "conscience shocking".  Even when viewing the facts alleged in the Complaint in a light most favorable to J.S.M., these actions cannot be said to have risen to such a level.  Accordingly, any claim that J.S.M.'s substantive due process rights were violated fail.  Further, Plaintiff must identify authority demonstrating that his substantive due process right was clearly established.  *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015).  Without such a showing, Claim Two should be dismissed.

### IV.    Remaining state law claims

Elements:

Because medical malpractice or negligent failure to provide adequate medical care does not constitute the unnecessary and wanton infliction of pain, it does not rise to a constitutional violation.  *Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999) ("A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation") (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)); *Ledoux v. Davies,* 961 F.2d 1536, 1537 (10th Cir. 1992).  "[W]hen a district court

dismisses the federal claims, leaving only supplemental state claims, the most common responses has been to dismiss the state claim or claims without prejudice." *United State v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) (citation omitted); *See* also 28 U.S. C. § 1367(c)(3).  When federal claims are dismissed prior to trial, the balance of factors (judicial economy, convenience, fairness and comity) will lean towards a federal court declining to exercise supplemental jurisdiction over the remaining claims. *Carnigie-Mellon University v. Cohill*, 484 U.S. 343, 350, n.7, 108 S. Ct. 614 (1988).

Argument:

Should the Court dismiss Plaintiffs' § 1983 claims, the Court would be deprived of subject matter jurisdiction over the remaining state law claims.  The "district court should normally dismiss supplemental state law claims after all federal claims are dismissed…before trial." *Botefuhr*, 309 F.3d at 1273.  Further, state law issues predominate over federal issues in this case. There is a clear potential for confusion of the issues given the state law claims have significantly different relief available under state law compared to federal law.  If the federal claims here are dismissed, there is no compelling reason for the district court to retain jurisdiction over the state law claims as the case is in the beginning stages and no formal discovery has occurred.

## CONCLUSION

For the foregoing reasons, the Denver Health Defendants requests this Honorable Court to dismiss the Complaint of Plaintiffs in its entirety, or for whatever relief it deems fair and reasonable.

DATED at Denver, Colorado this day 12th of November, 2019.

s/ Anthony E. Derwinski
Anthony E. Derwinski, Esq., Colo. Bar #44408
Ruegsegger Simons & Stern, LLC
1700 Lincoln Street, Suite 4500
Denver, Colorado 80203
Phone:  303.623.1131
Fax:  303.623.1141
E-mail: aderwinski@rs3legal.com
*Attorneys for Defendants Denver Health, Nina Chacon and Rachime Herch*

**Statement pursuant to Judge Domenico's Practice Standard III.A.4.**:  I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.1.  The total word count of the brief, excluding the caption, signature block and certificate of service is 3991 words.

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of November, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will provide notice to all counsel of record.

s/ Anthony E. Derwinski
Anthony E. Derwinski, Esq., Colo. Bar #44408
Ruegsegger Simons & Stern, LLC
1700 Lincoln Street, Suite 4500
Denver, Colorado 80203
Phone:  303.623.1131
Fax:  303.623.1141
E-mail: aderwinski@rs3legal.com