IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02437-DDD-NYW

DIANA SANCHEZ,
J.S.M., by and through his mother DIANA SANCHEZ,

    Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER, COLORADO;
DENVER HEALTH AND HOSPITAL AUTHORITY d/b/a DENVER HEALTH MEDICAL CENTER;
RACHIME HERCH, in his individual and official capacities;
NINA CHACON, in her individual and official capacities;
ALEXANDRA WHERRY, in her individual capacity;
MICHAEL HART, in his individual and official capacities;
TYSEN GARCIA, in his individual and official capacities;
JUSTIN ALBEE, in his individual and official capacities;

    Defendants.

## ORDER ON OUTSTANDING MOTIONS

Magistrate Judge Nina Y. Wang

This matter comes before the court on three motions:

(1) Defendants the City and County of Denver (the "City"), Alexandra Wherry, Michael Hart, Tysen Garcia, and Justin Albee (the "Individual Denver Defendants" and collectively with the City, the "Denver Defendants") Motion to Stay Discovery (the "Motion" or "Motion to Stay"), filed December 18, 2019, [#34];

(2) The Denver Defendants and Defendants Denver Health and Hospital Authority ("Denver Health") and Chacon and Herch's ("Individual Denver Health Defendants", and collectively with Denver Health, the "Denver Health Defendants") Joint Motion to Extend

Discovery Response Deadline (the "Joint Motion to Extend"), filed February 12, 2020, [#60]; and

(3) Plaintiffs Diana Sanchez and J.S.M. (collectively, "Plaintiffs') Motion for Leave to File Amended Complaint (the "Motion to Amend"), filed February 18, 2020, [#62].

The presiding judge, the Honorable Daniel D. Domenico, referred the Motions to the undersigned pursuant to 28 U.S.C. § 636(b) and the Orders Referring Motions dated December 26, 2019, February 12, 2020, and February 18, 2020. *See* [#38; #61; #63]. Having reviewed the Motions and associated briefing, the applicable case law, and being otherwise advised in its premise, I **DENY** the Motion to Stay; **GRANT** the Joint Motion to Extend; and **CONSTRUE** the Motion to Amend as a Notice of filing an amended pleading pursuant to D.C.COLO.LCivR 15.1(a).

## BACKGROUND

On July 14, 2018, Plaintiff Diana Sanchez ("Plaintiff Sanchez" or "Ms. Sanchez") was booked into the Denver County Jail (the "jail"); Defendant Denver Health and Hospital Authority ("Denver Health") personnel noted that Ms. Sanchez was over eight months pregnant, with a due date of August 9, 2018. *See* [#1 at ¶¶ 18-19]. On July 30, 2018, a Denver Health nurse examined Plaintiff Sanchez and directed Ms. Sanchez to seek immediate medical attention should she start having contractions or notice the presence of any leaking fluids from her body. *See* [*id.* at ¶ 22]. At or around 5:00 a.m. the following day, July 31, 2018, Ms. Sanchez informed jail personnel, who allegedly informed Denver Health personnel, that she was in active labor and experiencing contractions. *See* [*id.* at ¶ 23]. Ms. Sanchez continually alerted jail personnel, including many of the Individual Denver Defendants as well as Defendants Nina Chacon and Rachime Herch (employees of Denver Health), that she was experiencing contractions and that her water broke. *See* [*id.* at ¶¶ 24-29]. Despite all this, Ms. Sanchez did not receive medical attention or transport

to a hospital and delivered her son, Plaintiff J.S.M. (collectively with Ms. Sanchez, "Plaintiffs"), alone in her cell. *See* [*id.* at ¶¶ 30-51]. Even after delivery, Ms. Sanchez alleges she received little to no medical attention commensurate with post-partum care, though she and Plaintiff J.S.M. were eventually transferred to Denver Health Medical Center. *See* [*id.* at ¶¶ 51-80].

Believing Defendants violated their constitutional rights, Plaintiffs initiated this action by filing their Complaint on August 28, 2019. *See* [#1]. Plaintiffs assert two constitutional claims pursuant to 42 U.S.C. § 1983 for (1) deliberately indifferent medical care in violation of the Eighth and/or Fourteenth Amendment against all Defendants ("Claim 1") and (2) Fourteenth Amendment substantive due process violations – special relationship liability asserted by Plaintiff J.S.M. against all Defendants ("Claim 2"), plus several state law claims for (3) medical negligence/negligent medical care and treatment against Denver Health and Defendants Chacon and Herch ("Claim 3"), (4) negligent operation of a correctional facility against the City and Denver Health ("Claim 4"), (5) negligent training and supervision against the City and Denver Health ("Claim 5"), and (6) outrageous conduct against Defendants Chacon and Herch ("Claim 6"). *See generally* [*id.*].

On November 8, 2019, the Denver Defendants filed their Motion to Dismiss the Complaint, arguing that the Individual Denver Defendants are entitled to qualified immunity, Plaintiffs fail to plead plausible municipal liability claims against the City, and the Colorado Governmental Immunity Act shields the City from Plaintiffs' negligence claims (Claims 4 and 5). *See* [#22]. On November 12, 2019, the Denver Health Defendants filed their Motion to Dismiss Plaintiffs' Complaint at Law, arguing Defendants Chacon and Herch are entitled to qualified immunity, Plaintiffs fail to plead plausible municipality liability claims against Denver Health, and the court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims to the extent

the court dismisses the federal claims against the Denver Health Defendants. *See* [#24]. Then, on December 18, 2019, the Denver Defendants filed the instant Motion to Stay, arguing that the court should stay all discovery pending its resolution of the Denver Defendants' Motion to Dismiss.[1] [#34]. The Denver Health Defendants do not oppose the Motion to Stay, *see* [*id.* at 1]; however, Plaintiffs oppose the Motion, arguing that the circumstances do not warrant a stay of discovery indefinitely, *see* [#46].

Then, on February 18, 2020, Plaintiffs filed their Motion to Amend. [#62]. Plaintiffs indicate that they wish to amend their operative Complaint to include two additional Denver Health employees as Defendants, Dorothy Gilkey, LPN and Rikki Warmus, Behavioral Healthcare Technician; to "clarify and add certain factual allegations"; to dismiss Claims 4 and 5 against the City; to remove factual allegations pertaining to medical information that is not "required to state Plaintiffs' claims"; and to remove Plaintiffs' request for economic damages. *See* [*id.* at 1-3]. Plaintiffs state that all Defendants "take no position on Plaintiffs' motion for leave to amend." [*Id.* at 5]. Because the Motions appear appropriate for disposition presently, *see* D.C.COLO.LCivR 7.1(d), I consider each in turn, beginning with the Motion to Amend despite the fact that it was filed chronologically last because it impacts the claims asserted in this matter, which may affect the Motion to Stay and ultimately the pending Motions to Dismiss

**ANALYSIS**

**I.      The Motion to Amend**

Plaintiffs filed their Motion to Amend before the February 24, 2020 deadline for Amendment of Pleadings set by this court, *see* [#50 at 19], and therefore the court's inquiry is governed by Rule 15(a)(2) of the Federal Rules of Civil Procedure. *See Fernandez v.*

---

[1] Pursuant to the entered Scheduling Order, the discovery deadline is set for September 25, 2020. *See* [#49; #50].

4

*Bridgeston/Firestone, Inc.*, 105 F. Supp. 2d 1194, 1195 (D. Colo. 2000). Rule 15(a)(2) provides that leave to amend is allowed "only with the opposing party's written consent or the court's leave" and "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Further, this District's Local Rules of Civil Practice allow a party to amend its pleading through the consent of the opposing party. D.C.COLO.LCivR 15.1(a).

Here, Plaintiffs seek leave to amend to include two additional defendants, to add and clarify factual allegations, to dismiss their negligence claims (Claims 4 and 5) as to the City, and to remove their request for economic damages. *See* [#62]. Because all Defendants "take no position" on the Motion to Amend, this court deems the Motion to Amend unopposed. Accordingly, I **CONSTRUE** the Motion to Amend as a Notice of filing an amended pleading pursuant to D.C.COLO.LCivR 15.1(a), and the Clerk of the Court shall docket the Amended Complaint [#62-2] as a separate entry on the court's docket.[2]

## II. The Motion to Stay

### A. Legal Standard

Whether to stay discovery is a matter left to the sound discretion of the trial court. *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990). Indeed, the Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings, but the power to stay "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time

---

[2] Although the pending Motions to Dismiss [#22; #24] have not been referred to the undersigned, I note that the filing of an amended pleading generally moots any motions to dismiss aimed at an inoperative pleading. *See See Gotfredson v. Larsen LP*, 432 F. Supp. 2d 1163, 1172 (D. Colo. 2006); *Strich v. United States*, No. 09-cv-01913-REB-KLM, 2010 WL 14826, at *1 (D. Colo. Jan. 11, 2010) ("The filing of an amended complaint moots a motion to dismiss directed at the complaint that is supplanted and superseded."). The Parties, however, do not address whether this is so here, and this court makes no determination in this regard other than to note the general principle articulated above and proceeds with the Motion to Stay that seeks a stay of discovery until the Denver Defendants' Motion to Dismiss is determined.

and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (citing *Kansas City S. Ry. Co. v. United States*, 282 U.S. 760, 763 (1931)). In determining whether a stay is appropriate, the court weighs interests such as whether defendants are likely to prevail in the civil action, whether defendants will suffer irreparable harm, whether the stay will cause substantial harm to other parties to the proceeding, and the public interests at stake. *United Steelworkers of Am. v. Oregon Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003). The court may also consider plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay, the burden on the defendants, and the convenience to the court. *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:02-cv-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006) (citing *FDIC v. Renda,* No. 85-2216-O, 1987 WL 348635, at *2 (D. Kan. Aug. 6, 1987)). Courts in this District generally disfavor the stay of all discovery, *see Wason Ranch Corporation v. Hecla Mining Co.*, No. 07-cv-00267-EWN-MEH, 2007 WL 1655362, at *1 (D. Colo. June 6, 2007), but such a stay may be appropriate pending the resolution pending the resolution of a Motion to Dismiss impacting immunity or jurisdictional issues, *Clarendon Nat'l Ins. Co. v. Glickauf*, No. 18-CV-02549-CMA-NYW, 2019 WL 1897845, at *2 (D. Colo. Feb. 14, 2019).

  **B.**  **Application**

The Denver Defendants offer two reasons for staying discovery pending the resolution of their Motion to Dismiss. First, they argue the court should stay discovery because the Individual Denver Defendants, sued in their individual capacities, assert qualified immunity as a defense to suit in their Motion to Dismiss. Second, the Denver Defendants argue that judicial economy favors a stay pursuant to the *String Cheese* factors as to all other claims. I consider each in turn.

***Qualified Immunity.*** Section 1983 of Title 42 of the United States Code "allows an injured person to seek damages against an individual who has violated his or her federal rights while acting under color of state law." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (quoting *Cillo v. City of Greenwood Village*, 739 F.3d 451, 459 (10th Cir. 2013)). The defense of qualified immunity is available to individual defendants named in a § 1983 action, and "shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted). Generally, after the defendant asserts qualified immunity, "the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Estate of Booker*, 745 F.3d at 411 (quoting *Cillo*, 739 F.3d at 460).

Immunity provisions, whether absolute or qualified, serve to spare officials from unwarranted liability as well as "demands customarily imposed upon those defending a long drawn out lawsuit," and are "effectively lost if a case is erroneously permitted to go to trial." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (quoting in part *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985)). With respect to qualified immunity, the United States Court of Appeals for the Tenth Circuit has explained:

> Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability. . . . Accordingly, qualified immunity questions should be resolved at the earliest possible stage in litigation. *Even such pretrial matters as discovery are to be avoided if possible, as inquiries of this kind can be peculiarly disruptive of effective government.*

*Martin v. County of Santa Fe*, 626 F. App'x 736, 740 (10th Cir. 2015) (quoting *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004) (emphasis in original)). Thus, "discovery generally should be avoided once qualified immunity is raised" unless the plaintiff demonstrates "how [such]

7

discovery will raise a genuine fact issue as to the defendants' qualified immunity claim." *Id.* (quoting *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1387 (10th Cir. 1994)). But the invocation of qualified immunity does not automatically lead to a stay, and some discovery may be necessary to resolve contested factual assertions when the defense is asserted in a motion for summary judgment. *See Rome v. Romero*, 225 F.R.D 640, 643 (D. Colo. 2004); *Sanchez v. Hartley*, No. 13-CV-01945-WJM-CBS, 2016 WL 7176718, at *7 (D. Colo. Apr. 26, 2016). *But see Tenorio v. Pitzer*, No. CV 12-1295 MCA/KBM, 2013 WL 12178001, at *3 (D.N.M. July 27, 2013).

In their Motion to Dismiss, the Individual Denver Defendants assert qualified immunity as to the federal claims (Claims 1 and 2) asserted against them in their individual capacities. *See generally* [#22]. For this reason, the Denver Defendants contend they are <u>all</u> entitled to a stay of discovery until the court resolves the qualified immunity question. *See* [*id.* at 2-5]. Plaintiffs counter that the invocation of qualified immunity does not automatically stay discovery as to all claims against all Defendants, including those that have not and cannot assert the defense. *See* [#46 at 5-7]. For this reason, discovery should proceed as scheduled. *See* [*id.*].

In certain instances, courts may grant a stay of discovery based on the invocation of qualified immunity in a motion to dismiss which would act as a complete defense from suit. *See Frey v. Reams*, No. 117CV00669LTBMJW, 2017 WL 4469118, at *2 (D. Colo. Oct. 4, 2017) (concluding that, until the court resolves the qualified immunity question asserted at the motion to dismiss phase, a stay of discovery is appropriate, even if that defense fails). Here, the invocation of qualified immunity is not dispositive of all claims. *See* [#22]. And as the Denver Defendants acknowledge, the City has not and cannot invoke qualified immunity as a basis for dismissal. [*Id.*]. Indeed, even if the Individual Denver Defendants are entitled to qualified immunity, this does not necessarily shelter a municipality from liability depending on the basis for which qualified

8

immunity was granted. *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). The same principle applies equally to Denver Health with respect to the Individual Denver Health Defendants' invocation of qualified immunity. [#24].

While this court acknowledges the general policy of staying discovery upon the invocation of qualified immunity as an immunity to suit and the concurrent burdens of discovery, *see Jiron*, 392 F.3d at 414, a stay pending the determination of qualified immunity arises from the principle that officials who may be entitled to immunity should be spared the burdens of discovery. *Siegert*, 500 U.S. at 232. But those concerns are somewhat belied here by the fact that Plaintiffs' federal claims (Claims 1 and 2) would seemingly proceed through discovery as to the Denver Health Defendants who have not moved to stay discovery (though they do not oppose a stay) [#34 at 2], as well as to the City and Denver Health. Therefore, it seems that the Individual Denver Defendants would be material witnesses to the actions of the Individual Denver Health Defendants.

In addition, I note (without passing on the substance of the Denver Defendants' Motion to Dismiss that is not pending before this court) that in urging dismissal, the Denver Defendants point to substantive evidence including the video recordings of Ms. Sanchez's cell during the time in question, thereby suggesting that the investigation and development of defenses that typically occurs during discovery has already, at a minimum, begun in earnest. Thus, I find that the invocation of qualified immunity by the Individual Denver Defendants, in and of itself, does not warrant a stay of discovery given that the Denver Health Defendants do not, on their own accord, seek to stay discovery and that qualified immunity does not apply to either the City or Denver Health.

I now turn to whether a stay is warranted based on the *String Cheese* factors.

**String Cheese *Factors*.** An evaluation of the *String Cheese* factors yields that on balance, a stay of discovery is not warranted. *See Lane v. Yohn*, No. 12-CV-02183-MSK-MEH, 2012 WL 4928216, at *3 (D. Colo. Oct. 15, 2012) (granting a temporary stay of discovery as to the municipality defendant on the basis that the *String Cheese* factors weighed in favor of a stay, and to avoid duplicitous scheduling and discovery); *Garcia v. Adams Cty., Colorado*, No. 16-CV-1977-PAB-NYW, 2017 WL 951156, at *3 (D. Colo. Mar. 8, 2017) (granting a stay of discovery as to the individual defendants that asserted qualified immunity and to the municipal-defendant because discovery against it was intertwined with the individual defendants).[3]

As to the first *String Cheese* factor, Plaintiffs undoubtedly have an interest in proceeding expeditiously in this matter. The incident at issue occurred on July 31, 2018, and even with the current schedule, will not likely reach resolution through dispositive motions and/or trial until 2021. And as discussed above, granting a stay pending resolution of the Denver Defendants' Motion to Dismiss "could substantially delay the ultimate resolution of the matter, with injurious consequences." *Chavez v. Young Am. Ins. Co.*, No. CIVA 06CV02419PSFBNB, 2007 WL 683973, at *2 (D. Colo. Mar. 2, 2007). Thus, this factor weighs against a stay of discovery.

As to the second *String Cheese* factor, the Denver Defendants argue that the burden on them in proceeding with discovery outweighs any interest Plaintiffs have in proceeding expeditiously. This is because the Individual Denver Defendants should not be subjected to burdensome discovery while their Motion to Dismiss is pending and the court has not ruled on

---

[3] Plaintiffs ask this court to apply a modified version of the *String Cheese* factors, one in which the Denver Defendants must establish a likelihood of success of their Motion to Dismiss. *See* [#46 at 2-5]. This court declines to apply this modified test, because "no element of the *String Cheese* factors requires that this court make a preliminary determination as to the likelihood of success of either the dispositive motion or the ultimate merits of this case." *Church Mut. Ins. Co. v. Coutu*, No. 17-CV-00209-RM-NYW, 2017 WL 3283090, at *3 (D. Colo. Aug. 2, 2017). Indeed, as noted, the Denver Defendants' Motion to Dismiss is not pending before the undersigned, and the filing of Plaintiffs' Amended Complaint likely moots the pending Motions to Dismiss. *See supra*, at n.2.

whether they are immune from suit. To be sure, parties are always burdened in some respect by discovery. *See Webb v. Brandon Exp. Inc.*, No. 09-cv-00792-WYD-BNB, 2009 WL 4061827, at *2 (D. Colo. Nov. 20, 2009). And this court is keenly aware of the burdens imposed by discovery that may be for naught if certain defendants are entitled to qualified immunity. *See Burkitt v. Pomeroy*, No. 15-CV-02386-MSK-KLM, 2016 WL 696107, at *1 (D. Colo. Feb. 22, 2016) ("Questions of jurisdiction and immunity should be resolved at the earliest stages of litigation, so as to conserve the time and resources of the Court and the parties"). But as discussed above, qualified immunity does not apply to the municipal claims against either the City or Denver Health, and resolution of claims involving any policy, practice, or custom by either the City or Denver Health—regardless of the Party who prevails—is significant for public confidence as it affects more than just the individual Plaintiffs in this action. Thus, I find that this factor weighs against a stay of discovery.

As to the third *String Cheese* factor, convenience to the court favors a stay. The filing of Plaintiffs' Amended Complaint introduces new Defendants, adds and clarifies factual allegations, and removes two claims against the City. Further, Defendants (including two new Defendants) have not had an opportunity to answer or otherwise respond to the Amended Complaint. Given that the fundamental nature of the Amended Complaint remains the same, it seems likely that Defendants will once again file dispositive motions. And the municipal claims also suggest that sensitive information regarding third parties may be implicated. All things equal, this court would prefer more certainty as to the claims moving forward which aids in the ability to appropriately frame discovery and assist Parties with any discovery disputes.

As to the fourth and fifth *String Cheese* factor, this court finds that the claims against the City necessarily implicate discovery of information beyond the events of July 31, 2018 and

individuals not party to this suit. Indeed, Plaintiffs' Complaint goes to great lengths to identify additional instances of perceived constitutional violations by the City to suggest an unconstitutional policy or custom caused Plaintiffs' alleged constitutional injuries in this matter. *See* [#1 at ¶¶ 86-157]. But as discussed before, the implications of these contentions have a far broader potential impact upon the public than just upon these two Plaintiffs and beyond the public's general interests in the expeditious resolution of civil matters and the efficient use of judicial resources.

On balance, this court concludes that a stay of discovery is not warranted when considering the *String Cheese* factors. Thus, I **DENY** the Motion to Stay.

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) The Denver Defendants' Motion to Stay [#34] is **DENIED;**

(2) The Joint Motion to Extend [#60] is **GRANTED**, and Defendants will have up to and including **March 25, 2020** to respond to Plaintiff's First Set of Interrogatories, Requests for Production, and Requests for Admission; and

(3) Plaintiff's Motion to Amend [#62] is **CONSTRUED** as a Notice of filing an amended pleading pursuant to D.C.COLO.LCivR 15.1(a), and the Clerk of the Court shall docket Plaintiffs' Amended Complaint [#62-2] as a separate entry on the court's docket .

DATED: February 26, 2020　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　Nina Y. Wang
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge